**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

_____
|                                          | §
| BRUCE MOLZAN                             | §
|                                          | §
|     *Plaintiff,*                         | §
|                                          | §
| v.                                       | §     Civil Action No._____
|                                          | §
| BELLAGREEN HOLDINGS, LLC,                | §     JURY TRIAL DEMANDED
| BELLAGREEN TEXAS, LLC,                   | §
| HARGETT HUNTER CAPITAL                   | §
|        PARTNERS, LLC,                    | §
| HARGETT HUNTER CAPITAL                   | §
|        ADVISORS, LLC,                    | §
| HARGETT HUNTER CAPITAL                   | §
|        MANAGEMENT, LLC                   | §
| JEFFREY G. BROCK,                        | §
| JASON C. MORGAN,                         | §
| MRC RALEIGH,                             | §
| MICHAEL A. ROSADO,                       | §
| JOEL CARTY,                              | §
| VARIOUS JOHN DOES, JANE DOES,            | §
|        AND ABC COMPANIES,                | §
|                                          | §
|     *Defendants*                         | §
|_____| §

## COMPLAINT

Plaintiff, Bruce Molzan ("Bruce Molzan" or "Plaintiff") complains and alleges against:

Defendants Bellagreen Holdings, LLC, Bellagreen Texas, LLC, Hargett Hunter Capital Partners,

LLC, Hargett Hunter Capital Advisors, LLC, Hargett Hunter Capital Management, LLC, Jeffrey

G. Brock, and Jason C. Morgan, (collectively "Bellagreen Defendants"); and against Defendants

MRC Raleigh, Michael A. Rosado, Joel Carty, and Various John Does, Jane Does, and ABC

Companies (collectively "Web Defendants"); as follows, referring to the Bellagreen Defendants and the Web Defendants collectively as "Defendants" unless specifically stated otherwise:

## NATURE OF THE ACTION

1.       This is an action for injunctive relief and monetary relief, including trebled or statutory damages, pre-judgment interest, disgorgement of profits, attorneys' fees, and costs under the Lanham Act and Texas state law resulting from Defendants' willful and intentional, direct and/or indirect, trademark infringement, trademark dilution, unfair competition and false designation of origin and false or misleading descriptions and representations of fact, unjust enrichment, and breach of contract.   This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"), the Texas Business and Commerce Code, and federal and Texas state common law.

2.       Plaintiff has been providing restaurant services for over 40 years under various "RUGGLES" trademarks, including among others RUGGLES®, RUGGLES GREEN®, and RUGGLES BLACK® which are federally registered trademarks.  As a result, consumers have come to recognize the "RUGGLES" trademarks and to associate them with restaurant services provided exclusively by Plaintiff.

3.       This case involves the advertising, selling, and promoting of restaurant services by the Bellagreen Defendants themselves and with the aid of the Web Defendants, through using or associating with the words "RUGGLES," "RUGGLES GREEN," and/or "RUGGLES BLACK."  Defendants' actions have caused and are likely to continue to cause confusion in the marketplace and dilution of Plaintiff's trademarks.  Defendants' actions also amount to unfair competition and unjust enrichment.  The Bellagreen Defendants' actions further amount to breach of contract.

4.      Defendants' have repeatedly associated the Bellagreen Restaurants with Plaintiff through the use of Plaintiff's name and Plaintiff's trademarks, despite Plaintiff's protests and despite the Bellagreen Defendants' agreement to stop and repeated misleading assurances they have stopped.  Defendants' conduct is unlawful and Plaintiff seeks the full range of remedies provided by law.

## THE PARTIES

5.      Plaintiff is an individual residing in Houston, Texas.  He is a master chef and believed to be one of the most recognized and innovative chefs in the food industry.  He graduated in the top 10 in his class at the Culinary Arts Institute of America and studied under a number of internationally acclaimed master chefs, including:  Wolfgang Puck in Los Angeles, at Spago's restaurant; Jeremiah Tower in San Francisco, at Stars restaurant; Hubert Keller in San Francisco, at Fleur de Lys; Herve Glen in Normandy, France; and Enrico Crippa in Alba, Italy. He was a Bocuse d'Or finalist; the Bocuse d'Or is one of the world's most prestigious cooking competitions, frequently referred to as the "Gastronomy equivalent of the Olympic Games." And he was named as "top chef" in Sarah Jane English's book on top chefs in Texas.  Plaintiff has been a popular restaurateur in Houston, Texas since the 1980's.

6.      On information and belief, Defendant Bellagreen Holdings, LLC is a limited liability company organized under the laws of the State of Delaware in August 2016, with its principal place of business represented to be 5601 Democracy Drive, Plano, Texas  75024. Bellagreen Holdings, LLC has a designated agent for service of process in the State of Texas, Jason C. Morgan, who has an address at 1010 Country Trail, Fairview, Texas  75069.  Defendant Bellagreen Holdings, LLC is a signatory on the contract in suit and on information and belief has

encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein.

7.      On information and belief, Defendant Bellagreen Texas, LLC is a limited liability company organized under the laws of the State of Delaware in August 2016, with its principal place of business represented to be 5601 Democracy Drive, Plano, Texas  75024.  Bellagreen Texas, LLC has a designated agent for service of process in the State of Texas, Jason C. Morgan, who has an address at 1010 Country Trail, Fairview, Texas  75069.  Defendant Bellagreen Texas, LLC is a signatory on the contract in suit and on information and belief has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein.

8.      On information and belief, Defendant Hargett Hunter Capital Partners, LLC is a limited liability company, organized under the laws of the State of Delaware in January 2016, with its principal place of business at 2626 Glenwood Avenue, Suite 300, Raleigh, North Carolina  27608.  Defendant Hargett Hunter Capital Partners, LLC is registered to do business in the State of Texas as a foreign entity and has a designated agent for service of process in the State of Texas, Jason C. Morgan, who has an address at 1010 Country Trail, Fairview, Texas 75069.  The Texas Secretary of State shows Defendant Hargett Hunter Capital Partners, LLC to be in existence, but it has made no filings with the Texas Secretary of State since March 2019. Defendant Hargett Hunter Capital Partners, LLC is a signatory on the contract in suit and on information and belief has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein.

9.      On information and belief, Defendant Hargett Hunter Capital Advisors, LLC, is a limited liability company, organized under the laws of the State of Texas in October 2018, with its principal place of business at 4242 Six Forks Road, Suite 950, Raleigh, North Carolina 27609, and also believed to be doing business at 2626 Glenwood Avenue, Suite 300, Raleigh, North Carolina  27608.  On information and belief, Defendant Hargett Hunter Capital Advisors, LLC has a designated agent for service of process in the State of Texas, Donald R. Fitzgibbons, who has an address at 216 Hills St., Albany, Texas  76430.  On information and belief, Defendant Hargett Hunter Capital Advisors, LLC has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein.

10.      On information and belief, Defendant Hargett Hunter Capital Management, LLC is a limited liability company, organized under the laws of the State of Delaware in October 2017, with its principal place of business at 4242 Six Forks, Suite 950, Raleigh, North Carolina 27609, and/or at 2626 Glenwood Avenue, Suite 300, Raleigh, North Carolina  27608.  On information and belief, Defendant Hargett Hunter Capital Management, LLC is not registered to do business in Texas and does not have a registered agent for service of process in Texas.  On information and belief, Defendant Hargett Hunter Capital Management, LLC has a designated agent for service of process, Incorporating Services, Ltd, at 3500 S. Dupont Highway, Dover, Delaware  19901.  On information and belief, Defendant Hargett Hunter Capital Management has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein, sufficiently to have a presence in Texas.

11.     On information and belief, Defendant Jeffrey G. Brock is an individual residing at 405 May Court, Raleigh, North Carolina, and is believed to be the Founder and Managing Partner of Defendant Hargett Hunter Capital Management, LLC and is believed to be a Manager or the Managing Partner of Defendant Hargett Hunter Capital Partners, LLC and Defendant Hargett Hunter Capital Advisors, LLC.  Defendant Brock was personally and directly involved in Texas in the acquisition of the Texas restaurants in suit.  Defendant Brock is prominently listed as an "employee" on the "Bellagreen restaurants" LinkedIn page, where he is stated as the "Founder and Managing Partner of Defendant Hargett Hunter Capital Management, LLC." Defendant Brock is listed on the "Hargett Hunter" website at *www.hargetthunter.com* as what is believed to be the top ranking member of the Hargett Hunter "team" and he is believed to provide leadership and direction to, and to have ultimate influence and control over, all of the Bellagreen Defendants in suit.

12.     On information and belief, Defendant Jason C. Morgan is an individual residing at 1010 Country Trail, Fairview, Texas  75069, and is believed to be the managing partner and principal officer of the one or more of the other Bellagreen Defendants, as well as a designated agent for service of process for one or more of the other Bellagreen Defendants. Defendant Morgan is prominently listed as an "employee" on the "Bellagreen restaurants" LinkedIn page, where he is stated as the "CEO at the Original ChopShop and bellagreen. [sic]". Defendant Jason C. Morgan is a signatory on the contract in suit as "Jason Morgan" and on information and belief has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein.

13.     On information and belief, Defendant MRC Raleigh is one or more individuals acting under the name of MRC Raleigh or MRC Raleigh LLC, a limited liability company organized under the laws of the State of North Carolina in 2019 and currently administratively dissolved or terminated, having an address at 5 W. Hargett St., Unit 409, Raleigh, N.C.  27601. On information and belief, MRC Raleigh is a website designer and web developer that also offers "brand development" and "brand messaging" services and graphic design services. On information and belief, Defendant MRC Raleigh has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein, sufficiently to have a presence in Texas.

14.     On information and belief, Defendant Michael A. Rosado is an individual, having an address at 5 W. Hargett St., Unit 409, Raleigh, N.C.  27601, and is believed to be the founder and manager of MRC Raleigh and the designated agent for service of process for MRC Raleigh LLC.  On information and belief, Defendant Michael A. Rosado has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein, sufficiently to have a presence in Texas.

15.     On information and belief, Defendant Joel Carty is an individual, having an address at 5 W. Hargett St., Unit 409, Raleigh, N.C.  27601, and is believed to be project manager of MRC Raleigh.  On information and belief, Defendant Joel Carty has encouraged, participated in, and/or benefited directly or indirectly from and continues to benefit directly or indirectly from, actions by one or more of the other Defendants complained of herein, sufficiently to have a presence in Texas.

16.     On information and belief, Defendants Various John Does, Jane Does and ABC Companies are individuals and entities currently unknown who are involved in the trademark infringement engaged in by the Bellagreen Defendants.  Plaintiff will move to amend this Complaint in the event these Defendants are identified.  The actual names of such Defendants are unknown to Plaintiff after having conducted a reasonable search with due diligence.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over Plaintiff's federal trademark infringement, unfair competition, and false designation of origin claims pursuant to at least 15 U.S.C. §§ 1114, 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338.

18.     This Court has subject matter jurisdiction over Plaintiff's claims that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a), because such claims are related to and arise from the same set of facts as Plaintiff's federal claims.

19.     This Court has personal jurisdiction over the Bellagreen Defendants because each such Bellagreen Defendant regularly conducts business within this judicial district, and a substantial part of the complained of acts occurred in this judicial district. This Court has personal jurisdiction over the Web Defendants because, upon information and belief, each such Web Defendant has committed acts of direct or indirect or contributory infringement of Plaintiff's registered marks in this judicial district and has had substantial contacts in this judicial district, and the Web Defendants purposefully availed themselves of the privilege of conducting activities in the forum.  All Defendants have caused injury to Plaintiff within Texas and within this judicial district.

20.     Venue of this action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are subject to personal jurisdiction within this judicial

district, and because a substantial part of the events giving rise to Plaintiff's claims occurred and are continuing to occur within this judicial district.

## FACTUAL BACKGROUND

### Plaintiff's RUGGLES Trademarks

21.     Plaintiff is a talented and hard-working master chef based in Houston, Texas.  He has enjoyed success and recognition for over thirty years, extending well beyond the boundaries of Texas.  He has prepared many, many thousands of meals, and served many thousands of persons, from the homeless to celebrities, including for example a number of world famous athletes, physicians, musicians, and even a President of the United States.

22.     Basketball legend Charles Barkley, wrote in his book "I May Be Wrong But I Doubt It," that Plaintiff's RUGGLES restaurant was one of his favorite restaurants, and the only restaurant he cited by name in Houston, which Barkley called "one of the best restaurant cities in America [and] maybe the most underrated." (2005 ed. at p. 143, Random House).   In 2020, Open Table, a national online restaurant reservation service, independently listed Plaintiff's RUGGLES BLACK restaurant third among Open Table's "Top Restaurants For Foodies" in Houston, Texas.

23.     Plaintiff has founded a number of successful restaurants, beginning in the early 1980s with RUGGLES, and later including RUGGLES GRILL, RUGGLES GREEN, RUGGLES AT THE BALLPARK, and RUGGLES BLACK restaurants, among others, whose names are referenced collectively herein as the "RUGGLES Trademarks."  Plaintiff has often had partners in these restaurants, but the trademark RUGGLES and variations of that trademark, i.e., the RUGGLES Trademarks, have always been associated with Plaintiff and his restaurant and bar services, including his creative and delicious food.

24.     Because of Plaintiff's extensive, continuous, and long-standing use and promotion of the "RUGGLES" name in Texas and elsewhere, consumers have come to associate the RUGGLES name as a source identifier of Plaintiff.  Plaintiff owns federally registered and common law trademark rights in the word "RUGGLES."  Plaintiff's federal trademark registrations include U.S. Federal Trademark Registration Nos. 2180256, 4725963, and 5685995 for the marks RUGGLES, RUGGLES GREEN, and RUGGLES BLACK, respectively, all for restaurant services or restaurant and bar services throughout the United States.  True and correct copies of these U.S. trademark registration certificates are attached respectively hereto as Exhibits A, B, and C.

25.     As a result of Plaintiff's extensive and continuous use of the RUGGLES Trademarks, Plaintiff has developed and continues to maintain highly valuable trademark rights and significant goodwill in the RUGGLES Trademarks.  Through Plaintiff's extensive, continuous and substantially exclusive use, the RUGGLES Trademarks have become well-known indicators of the origin and quality of Plaintiff's foods and restaurant and bar services at Plaintiff's restaurant locations, and the foods and services of Plaintiff promoted under the RUGGLES Trademarks have become favorably accepted by the consuming public.  The RUGGLES Trademarks have also acquired substantial secondary meaning in Texas and elsewhere, as consumers have come to uniquely associate the RUGGLES Trademarks as source identifiers of Plaintiff in Texas, including geographic areas within Texas such as this judicial district, and elsewhere.

26.     The RUGGLES Trademarks have also become famous within Texas and elsewhere due to at least 40 years of extensive, continuous, and substantially exclusive promotion and use of the RUGGLES Trademarks within the State of Texas and elsewhere.

Through that extensive, continuous, and substantially exclusive use, the RUGGLES Trademarks have become famous and well-known indicators of the origin and quality of Plaintiff's food and restaurant and bar services, and the RUGGLES Trademarks are widely recognized by the public throughout Texas and elsewhere as a designation of source in geographic areas within Texas, including this judicial district.

27.    In view of Plaintiff's lifetime of work resulting in the strong reputation of the RUGGLES Trademarks, for Plaintiff's food and restaurant and bar services, Plaintiff takes seriously the need to protect the RUGGLES Trademarks and the valuable goodwill associated with the RUGGLES Trademarks.

**The Defendants' Unlawful Activities**

28.    Plaintiff began the first of what would become a group of five RUGGLES GREEN restaurants with two partners in 2008.  Those partners forced sale of these ongoing RUGGLES GREEN restaurants to Bellagreen Defendant Hargett Hunter Capital Partners LLC and its affiliated companies in 2016, the same year Bellagreen Defendant Hargett Hunter Capital Partners, LLC was organized.  That sale included transfer of a license from Plaintiff allowing use of the RUGGLES GREEN trademark for the name of the restaurants under the same license terms as the selling group had had.  Plaintiff did **not**, however, sell his RUGGLES GREEN trademark.  Plaintiff had only *revocably* licensed the RUGGLES GREEN trademark for the name of the purchased restaurants and operation under that name and trademark.

29.    Plaintiff's company managing the RUGGLES GREEN restaurants, Green Café Management, had obtained the domain name *rugglesgreen.com* in 2008 to use with the RUGGLES GREEN restaurants, and so Plaintiff was willing to allow the Bellagreen Defendants to use the domain name so long a time as the Bellagreen Defendants licensed the trademark

11

RUGGLES GREEN for the restaurants that Bellagreen Defendant Hargett Hunter Capital Partners LLC and its affiliated companies had purchased.  To facilitate the Bellagreen Defendants' use of the domain name, Green Café Management had transferred the domain name to them, with the understanding (or proviso) that their ownership and use of it was tied to their license of the RUGGLES GREEN trademark for use as the name of the purchased restaurants.

30.     Plaintiff and the Bellagreen Defendants were at odds from the beginning.  First Plaintiff objected, among other things, to the Bellagreen Defendants' misrepresenting that food offered at the restaurants was made from ingredients from local farmers when the Bellagreen Defendants had discontinued that practice.  Plaintiff threatened to revoke the RUGGLES GREEN trademark license.  Defendants thereafter issued a press release that they were changing the name of the restaurants from RUGGLES GREEN to BELLAGREEN.

31.     After the Bellagreen Defendants adopted the BELLAGREEN name instead of RUGGLES GREEN for the restaurants, Plaintiff objected to the Bellagreen Defendants continuing to use the mark RUGGLES GREEN, and thereby misusing the RUGGLES GREEN trademark to divert traffic to the BELLAGREEN restaurants.   Among other things, Plaintiff objected to the Bellagreen Defendants misusing the RUGGLES GREEN trademark by using the domain name *rugglesgreen.com* to redirect to the Bellagreen Defendants' new website at *bellagreen.com*.

32.     Plaintiff brought suit in this judicial district against the Bellagreen Defendants over violation of Plaintiff's trademark rights in December 2017, alleging among other things that Defendants' infringing activities were usurping Plaintiff's goodwill in his RUGGLES and RUGGLES GREEN trademarks for the benefit of the Bellagreen Defendants' BELLAGREEN trademark. That lawsuit was Civil Action No. 4:17-cv-03898.

33.     The parties settled that lawsuit in 2018 and the Bellagreen Defendants agreed among other things that their trademark license to use the RUGGLES GREEN trademark was revoked and that the Bellagreen Defendants were not to redirect web traffic for the term "RUGGLES" or "RUGGLES GREEN" to the Bellagreen Defendants' website at *bellagreen.com*.  The Bellagreen Defendants further agreed that they would return the *rugglesgreen.com* domain name to Plaintiff and would inform and direct Google Maps, Apple Maps, Yelp, NextDoor, My Table, FaceBook, Google, Yahoo, Trip Advisor and similar websites to remove and/or cancel map directions and any other information relating RUGGLES GREEN to BELLAGREEN.  A true and correct copy of the settlement agreement is attached as Exhibit D.

34.     Seven months later, in December 2018, shortly before the domain name *rugglesgreen.com* was due for renewal, the Bellagreen Defendants transferred that *rugglesgreen.com* domain name back to Plaintiff.

35.     Plaintiff inadvertently missed his deadline for renewing his domain name *rugglesgreen.com* and did not realize he had lost it until he resumed plans and began efforts to open a new RUGGLES GREEN restaurant.  He then learned from a GoDaddy representative that an "unknown party" had acquired the domain name the *first* day it became available again.

36.     Although about eighteen months had then passed since the Bellagreen Defendants agreed in settlement not to redirect web traffic for the term "RUGGLES" or "RUGGLES GREEN" to *bellagreen.com*, and to inform and direct ˝Google Maps, Apple Maps, Yelp, NextDoor, My Table, FaceBook, Google, Yahoo, Trip Advisor and similar websites to remove and/or cancel map directions and any other information relating Ruggles Green to Bellagreen,

the tie between RUGGLES GREEN and BELLAGREEN remained remarkably present on the Internet.

37.     For example, a general Google search on February 1, 2020 for "Ruggles Green" resulted in not only BELLAGREEN restaurants, but also Google customer reviews for a "RUGGLES GREEN" restaurant and map directions to that restaurant, even though that restaurant was actually a BELLAGREEN restaurant. Plaintiff had not yet opened a new RUGGLES GREEN restaurant.

38.     Curious as to why Google was still associating the mark RUGGLES GREEN with the BELLAGREEN restaurants after so many months, a legal assistant to Plaintiff's attorney discovered that there was on the Internet a subdomain *rugglesgreen.wpengine.com* in the HTML source code on the BELLAGREEN restaurant website at www.bellagreen.com.  A link in that source code, *http://rugglesgreen.wpengine.com/wp-content/uploads/2017/08/bellagreen-google-logo.jpg*, immediately resolved to a webpage showing the BELLAGREEN restaurant logo. Typing in the subdomain directly, *rugglesgreen.wpengine.com*, into the computer internet search bar resulted in an immediate redirect to *bellagreen.com*, the website for BELLAGREEN restaurants.  Exhibit E, ¶¶ 2, 3, 4.  GoDaddy and WPENGINE representatives indicated that the owner of these domains was private but that there must be a relationship between the *rugglesgreen.wpengine.com* subdomain and a *rugglesgreen* domain for the subdomain on the BELLAGREEN restaurant website homepage to exist. Exhibit E, ¶ 9.  On information and belief, that associated r*ugglesgreen* domain supporting that infringing subdomain was rugglesgreen.com, the domain name the "unknown party" (referenced above in Paragraph 35) had acquired on the *first* day it became available.  On information and belief, that "unknown

party" was affiliated in some way and/or known to the Bellagreen Defendants and/or the Web Defendants. *Id*.

39.     Plaintiff brought a UDRP proceeding under ICAAN rules at the FORUM in February 2020 to recover his *rugglesgreen.com* domain name from that "unknown party."  On information and belief, the "unknown party" continued to hide its true identity or affiliation in the UDRP proceeding, falsely identifying itself as a famous musician, Mitar Miric in the Republic of Serbia, and providing a fictitious address taken from words from one of that musician's songs.  The trademark expert panelist judging the UDRP proceeding found the "unknown party" had acted in bad faith and ordered return of the *rugglesgreen.com* domain name back to Plaintiff.  A true and correct copy of the decision is attached as Exhibit F.

40.     Although the true identity of the "unknown party" remains unknown, on information and belief, that "unknown party" was directly or indirectly affiliated with or directed and controlled by, the Bellagreen Defendants or the Web Defendants acting on behalf of or to benefit the Bellagreen Defendants, and that "unknown party" had acquired and had been using the domain name *rugglesgreen.com* in bad faith to facilitate a redirect of business to the Bellagreen Defendants and to interfere with Plaintiff's business.

41.     Once Plaintiff had thus recovered his *rugglesgreen.com* domain name pursuant to the decision in his favor in the UDRP proceeding, Plaintiff was able to stop the diversion that had been caused by typing into the computer internet address bar the subdomain, *rugglesgreen.wpengine.com*, which had immediately redirected to *bellagreen.com*, the website for BELLAGREEN restaurants.   However, the Bellagreen Defendants did not remove the reference to RUGGLES GREEN in their home page and a strong internet association continued. The Bellagreen Defendants' website *bellagreen.com*, continued its "link" to RUGGLES GREEN

in its meta tags or website source code.  The following "Ruggles Green" link continued to appear:  *http://rugglesgreen.wpengine.com/wp-content/uploads/2017/08/bellagreen-google-logo.jpg.*

42.     Further, before Plaintiff recovered his domain name *rugglesgreen.com* earlier in 2020, the knowledge panel (also called an information box) that would appear in a Google search for "Ruggles Green" would show a "Ruggles Green" restaurant photograph, including opening and closing times and a map location to a Bellagreen restaurant with a photo of a restaurant with "Bellagreen" signage.  After Plaintiff was able to recover his domain name, a Google search for "Ruggles Green," would result in a knowledge panel popping up for a "Bellagreen" restaurant but with a picture of a restaurant with "Ruggles Green" signage, while a Google search for "Bellagreen" yielded no information or photographs in the knowledge panel—only the company name of "Bellagreen Holdings."  A Google search for "Ruggles" also resulted in results for the Bellagreen restaurants, including showing their map locations.

43.     On information and belief, surreptitious coding and/or web manipulation by the Bellagreen Defendants and/or the Web Defendants on behalf of or for the benefit of the Bellagreen Defendants taught and continued to reinforce to the Google search engines a relationship between the RUGGLES Trademarks and Bellagreen, and a relationship between Plaintiff and Bellagreen, when Plaintiff has never authorized such relationships.

44.     Plaintiff was not able to substantially reduce the internet or web association of the Bellagreen restaurants with Plaintiff or Plaintiff's RUGGLES GREEN trademark during 2020, despite Plaintiff's complaints to Google to remove the associations that continually popped up in Google searches for RUGGLES GREEN and on Google Maps.  Understanding that Google's search engines have a proprietary formula for searching the internet for words that result in the

associations the Google search engine makes, Plaintiff's undersigned counsel continued to look

for more clues on the internet that might explain the continued linking or associations of

RUGGLES GREEN, and other RUGGLES Trademarks, with the Bellagreen restaurants in 2020,

then about three years after the Bellagreen Defendants had changed the name of the restaurants

to BELLAGREEN.

45.     Plaintiff's undersigned counsel eventually discovered during the year 2020, that

notwithstanding the contrary terms in the settlement agreement with Plaintiff (at Exhibit D)

executed in 2018, Bellagreen Defendants Hargett Hunter Capital Partners, LLC, Hargett Hunter

Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC, stated on their website at

http://hargetthunter.com/portfolio/bellagreen/ that, "Founded in 2008, Bellagreen (formerly

'Ruggles Green') is a premium fast-casual restaurant concept . . . ." and showed a picture of a

restaurant bearing a "Ruggles Green" sign.  This statement was false and the depiction

misleading.  Bellagreen was never "formerly 'Ruggles Green.'"   "Ruggles Green" is a federally

registered trademark for restaurant services provided by or in association with Plaintiff, Bruce

Molzan.  Bellagreen was never a restaurant providing services by or in association with Bruce

Molzan.  Hargett Hunger's inclusion of a photograph showing a restaurant with "Ruggles Green"

signage compounded the problem, suggesting an affiliation between the RUGGLES GREEN and

BELLAGREEN trademarks and their respective owners, Plaintiff and one or more of the

Bellagreen Defendants, when there was none.

46.     This statement on the website of Bellagreen Defendants Hargett Hunter Capital

Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management,

LLC, in 2020, conflicted with the terms of the settlement agreement, which stated that the

Bellagreen Defendants were permitted to continue to use the name "Ruggles Green" only 30

days after execution of that agreement, and then only for the purpose of informing the public of renaming and rebranding of the restaurants. That period expired August 7, 2018.

47.     In December 2020, Plaintiff's undersigned counsel wrote counsel for the Bellagreen Defendants citing the Bellagreen Defendants' multiple violations of the RUGGLES Trademarks and the settlement agreement.  A copy of that letter and the Bellagreen Defendants' counsel's reply is attached at Exhibit G.

48.     While Bellagreen Defendants Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC then appeared to stop referring to RUGGLES GREEN on their website, the Bellagreen Defendants' knowledge panels for "Bellagreen" continued to cause confusion in Google searches and Google Map searches for RUGGLES GREEN, RUGGLES, and RUGGLES BLACK in 2021.

49.     Plaintiff and Plaintiff's undersigned counsel continuously complained to Google, objecting that Google internet searches for RUGGLES GREEN resulted in "Bellagreen" appearing first before or to the exclusion of RUGGLES GREEN, along with knowledge panels for Bellagreen Holdings and for Bellagreen.  Plaintiff and its counsel's complaints eventually resulted in Google changing the knowledge panels to a RUGGLES GREEN panel indicating that the RUGGLES GREEN restaurants were closed.  However in less 24 hours of the appearance of such correct RUGGLES GREEN knowledge panel, the panel was removed and replaced with the Bellagreen Holdings and Bellagreen knowledge panels again.  Plaintiff's undersigned counsel again wrote counsel for the Bellagreen Defendants in June 2021, and the Bellagreen Defendants responded that they took "no position" regarding the matter, further alleging that they did not know how the panels were being generated or changed and referring Plaintiff back to Google.  A true and correct copy of that letter and the reply are attached at Exhibit H.

50.     On information and belief from Google information, and contrary to the representations of the Bellagreen Defendants, the confusing Bellagreen knowledge panels were claimed by or on behalf of a Bellagreen Defendant and/or a Web Defendant on behalf of the Bellagreen Defendants and the Defendants were and are responsible for the content and the consequences of that content on the Google search engine.  As late as March 2022, a Google search for RUGGLES GREEN still showed a Bellagreen knowledge panel and a Google search for "Bellagreen" did not show a Bellagreen knowledge panel.  See Exhibit I.

51.     As of about October 2021, a search of Google Maps for RUGGLES GREEN resulted in a first result to the Bellagreen Defendants' BELLAGREEN restaurant on Alabama Street in Houston, walking distance to Plaintiff's then RUGGLES BLACK restaurant on Kirby Street in Houston, and even closer walking distance to Plaintiff's new RUGGLES DESSERT CAFÉ AND BAKERY, also on Kirby Street, where Plaintiff had also been trying to promote a new RUGGLES GREEN restaurant. The second result on the Google map was to that RUGGLES GREEN restaurant location.  Plaintiff has now closed that RUGGLES DESSERT CAFÉ AND BAKERY.  As of March 2022, a search of Google Maps for RUGGLES GREEN resulted in a paid ad for RUGGLES BLACK restaurant between two results for different BELLAGREEN restaurants on the first page of the search results and two more results for different BELLAGREEN restaurants and an unpaid result for RUGGLES BLACK on the second page of the search results.  As of the time of filing of this lawsuit, a search of Google Maps for RUGGLES GREEN gave similar results except for the paid ad for RUGGLES BLACK being the first result and several unpaid results for BELLAGREEN following thereafter, including the first one showing BELLAGREEN after RUGGLES BLACK stating "…used to ruggles green but later changed the name to bella green." See Exhibit J.

52.     As of about October 2021, and as late as March 2022, and even still at the time of the filing of this lawsuit, a search for RUGGLES GREEN on Apple Maps resulted in and continues to result in only two results, both of which are to Bellagreen Defendants' BELLAGREEN restaurants. See Exhibit K.

53.     As late as March 2022, and still at the time of the filing of this lawsuit, a search for RUGGLES on Houston First Corporation's website *www.visithoustontexas.com*, promoting tourism and commerce in cooperation with the City of Houston, resulted in the first five of six results (called "listings") being not for "Ruggles" but rather for the five BELLAGREEN restaurants in Houston, respectively BELLAGREEN-City Centre, BELLAGREEN-Sugarland, BELLAGREEN-Heights, BELLAGREEN-River Oaks, and BELLAGREEN-Vintage Marketplace, all with the following general description referring to Bellagreen being "rebranded from the former Ruggles Green:"

> Rebranded from the former ***Ruggles*** Green, Bellagreen is the only eatery in Houston to boast the title of Certified Green Restaurant and features "eco-conscious" green practices including water-saving devices, alternate power sources and healthy dietary options. Now with six locations across Houston, the [CityCentre, or Sugarland, or 'reimagined' Heights location, or River Oaks or Vintage Marketplace] outpost [or location] offers more of their fast and casual favorites including high-protein ...

and a picture of a drawing of a BELLAGREEN restaurant that one or more of the Bellagreen Defendants had prepared and that does not depict a RUGGLES GREEN restaurant that ever existed.  True and correct screenshots are at Exhibit L.  In October 2021, this same search resulted in the first nine of ten results being not for "Ruggles" but rather for BELLAGREEN restaurants in Houston, and for the BELLAGREEN restaurant in The Woodlands, and included some redundancy.

54.     As late as March 2022, and still at the time of filing of this lawsuit, a search for RUGGLES GREEN on Houston First Corporation's website *www.visithoustontexas.com,*

resulted in the same five results as the search for RUGGLES discussed in Paragraph 53, showing

BELLAGREEN restaurants in Houston instead, except positioned on the second page of the

search results as nos. 16-18 and 20-21 of 511 "listings," with essentially the same general

description referring to Bellagreen being "rebranded from the former Ruggles Green:"

> Rebranded from the former ***Ruggles Green***, Bellagreen is the only eatery in Houston to boast the title of Certified ***Green*** Restaurant ... and features "eco-conscious" ***green*** practices including water-saving devices, alternate power sources and healthy dietary options. Now with six locations across Houston, the [CityCentre, or Sugarland, or 'reimagined' Heights location, or River Oaks or new (Vintage Marketplace)] outpost [or location] offers more of their fast and casual favorites including high-protein ...

and the same picture of a drawing of a BELLAGREEN restaurant that one or more of the

Bellagreen Defendants had prepared and that does not depict a RUGGLES GREEN restaurant

that ever existed.  True and correct screenshots are at Exhibit M.

55.     As late as March 2022, and still at the at the time of the filing of this lawsuit, a

search for BELLAGREEN on this same *www.visithoustontexas.com* website resulted in similar

results as with the searches for RUGGLES and RUGGLES GREEN discussed in Paragraphs 53

and 54, for the first five of the nine results, with the same picture of a drawing of a

BELLAGREEN restaurant that one or more of the Bellagreen Defendants had prepared and with

a similar description, referring to Bellagreen being "rebranded from the former Ruggles Green:"

> Rebranded from the former Ruggles Green, ***Bellagreen*** is the only eatery in Houston to boast the title of Certified Green Restaurant ... mac & cheese. Additionally, all salads, pizzas, and pasta dishes can be made gluten-free. ***Bellagreen*** at [The Heights location, SugarLand, CityCentre, Vintage Marketplace, River Oaks] is open from …

and the same picture of a drawing of a BELLAGREEN restaurant that one or more of the

Bellagreen Defendants had prepared and that does not depict a RUGGLES GREEN restaurant

that ever existed.  True and correct screenshots are at Exhibit N.

56.     On information and belief, and including information from the Houston First Corporation about their *www.visithoustontexas.com* website, such results as those described above in Paragraphs 53, 54, and 55, showing Bellagreen restaurants in those search results, are provided by the owner(s) of the Bellagreen restaurants, and are <u>only</u> in the listed search results with the approval and direction of the owner(s) of the Bellagreen restaurants.  On information and belief, and including information from the Houston First Corporation, <u>the Houston First Corporation would not prepare such results as those showing Bellagreen restaurants for a search for "Ruggles" or "Ruggles Green" or "Bellagreen" and post them *except* at the request of the owner of the Bellagreen restaurants</u>.

57.     As late as December 28, 2021, a Google search for "Ruggles Green" resulted in a result or an ad for a Bellagreen restaurant that when clicked would show a "menu highlight" of "Ruggles Green" and a knowledge panel including some alleged customer quotes referring to "Bellagreen" being previously "Ruggles Green" and stating that "if you loved Ruggles Green you will love Bellagreen."  Screenshots are attached at Exhibit O.  As late as March 2022, this search yielded similar results, except that the "menu highlight" of "Ruggles Green" did not show.  On information and belief, and from information from Google, a "menu highlight" is inserted by the business owner, namely one or more of the Bellagreen Defendants, not by Google.

58.     The continued and repeated uses of "Ruggles Green" and other RUGGLES Trademarks on the Internet by the Bellagreen Defendants, and the Web Defendants' acting on behalf of or for the benefit of the Bellagreen Defendants, in advertising and promotional websites, in knowledge panels and website text, in photographs, and in source code and metatags and similar means to divert traffic searching for "Ruggles" restaurants to Bellagreen restaurants,

are trademark infringements under both federal and Texas state law, and constitute other violations of the Lanham Act, 15 U.S.C. § 1051 et seq, as well as unfair competition and trademark dilution under Texas law.

59.     The Bellagreen Defendants agreed in the settlement agreement that they would "take all necessary steps under their direction and within their control to not redirect web traffic for the term 'Ruggles' or 'Ruggles Green' to the term "Bellagreen," . . . ." The Bellagreen Defendants, themselves and through the Web Defendants acting on behalf of or for the benefit of the Bellagreen Defendants, have done the contrary in breach of that agreement.

60.     The Bellagreen Defendants represented in the settlement agreement that they had "informed and directed Google Maps, Apple Maps, Yelp, NextDoor, My Table, FaceBook Google, Yahoo, Trip Advisor, and similar websites to remove and/or cancel map directions and any other information relating Ruggles Green to Bellagreen." The opposite has occurred, in breach of that agreement.

61.     The Bellagreen Defendants, and on information and belief the Web Defendants, have repeatedly focused on confusing the public in associating the Bellagreen restaurants with the RUGGLES Trademarks. The Bellagreen Defendants and the Web Defendants have intended to wrongfully divert customers from the "Ruggles" restaurants to a Bellagreen restaurant.

62.     The conduct of the Bellagreen Defendants and on information and belief the Web Defendants shows they intended and continue to intend to confuse the public into thinking that the Bellagreen restaurants are the "Ruggles Green" restaurants "with a different name," which they are not.

63.     The Bellagreen Defendants intentionally failed to comply with the terms of the Settlement Agreement, using the agreement to surreptitiously allow themselves time to continue

to associate themselves with Plaintiff and his popular restaurants under his RUGGLES

Trademarks, to benefit the Bellagreen Defendants themselves, at Plaintiff's expense.

64. The Bellagreen Defendants and the Web Defendants have egregiously violated

the Lanham Act, and Federal and Texas state trademark and unfair competition laws, by

continuing to use and associate the Bellagreen Defendants with the RUGGLES Trademarks, and

Plaintiff. Through their repeated representations of "rebranding" RUGGLES GREEN to

BELLAGREEN and repeated references of "Bellagreen' as "formerly Ruggles Green," and

repeated representations that "everything" at Bellagreen "is the same except the name,"

Defendants have sought to abscond with the good will associated with the RUGGLES GREEN

trademark, good will that Plaintiff has built and developed over time and that also includes

Plaintiff's good will associated with the RUGGLES trademark as well, which Plaintiff has used

for forty years. Defendants' commandeering Plaintiff's good will in his RUGGLES GREEN

mark is causing the RUGGLES GREEN mark to lose its distinctiveness as a mark. Such damage

has extended over to Plaintiff's other RUGGLES marks as well. Representatives of the

Bellagreen Defendants have maligned Plaintiff as an individual, while seeking to associate with

his excellent reputation for delicious food beautifully presented with excellent service,

cannibalizing Plaintiff's good will to have it exclusively for themselves and to injure Plaintiff

and thereby reduce future competition from him.

65. The actions of the Bellagreen Defendants and the Web Defendants have and will

continue to result in direct, substantial overlap between and confusion among Plaintiff's current

customer base and the Bellagreen Defendants' current customer base, and the parties respective

channels of trade, within this judicial district and the State of Texas.

66.     The Web Defendants have knowingly facilitated, enabled, and/or otherwise contributed to the wrongdoings of the Bellagreen Defendants and in doing so the Web Defendants are themselves also liable.

67.     Defendants' actions are unfair and unlawful.  Defendants' intentional and unauthorized actions further constitute infringement and dilution of the RUGGLES Trademarks, false advertising, and false association with Plaintiff.

68.     Defendants' actions are an attempt to unfairly compete in violation of federal and state law, and constitute statutory and common law trademark infringement, dilution and unfair competition, and unjust enrichment.

### Injury to Plaintiff

69.     Defendants' unauthorized use of and association of the Bellagreen Defendants with the RUGGLES Trademarks has allowed and will continue to allow the Bellagreen Defendants to receive the benefit of the goodwill built up at the great labor and expense by Plaintiff in the RUGGLES Trademarks.

70.     Defendants' unauthorized use of and association of the Bellagreen Defendants with the RUGGLES Trademarks further has allowed and will continue to allow the Bellagreen Defendants to gain acceptance for their products and services, based not on the Bellagreen Defendants' own merits as new, start-up companies which they were when Bellagreen Defendant Hargett Hunter Capital Partners, LLC, and its affiliates acquired the restaurants five years ago, but rather based on the Bellagreen Defendants' improper and unauthorized association with the reputation and goodwill of Plaintiff that Plaintiff developed and earned through his continuously diligent labors as a chief for over 40 years.

71.     Defendants' unauthorized use of and association with the RUGGLES Trademarks has falsely indicated and will continue to falsely indicate to the purchasing public that the Bellagreen Defendants and/or their products and/or their services are in some manner connected with, sponsored by, affiliated with, or related to Plaintiff and/or Plaintiff's products and/or services.

72.     Defendants' unauthorized use of and association of the Bellagreen Defendants with the RUGGLES Trademarks places the valuable reputation and goodwill of the RUGGLES Trademarks and Plaintiff as a master chef in the hands of the Defendants, over whom Plaintiff has no control.

73.     The above-mentioned activities of Defendants have caused and are likely to continue to cause confusion, or to cause mistake in the marketplace and among the consuming public, or to deceive customers or potential customers wishing to purchase services or products sponsored by, associated with, or affiliated with Plaintiff, to instead purchase services or products from the Bellagreen Defendants who are Plaintiff's competitors.

74.     The RUGGLES Trademarks are famous, distinctive, valuable, and are entitled to protection under Texas and federal law.  Plaintiff has extensively, continuously, and substantially exclusively promoted and used the RUGGLES Trademarks for many years in the State of Texas and elsewhere.  Through that extensive, substantially exclusive and continuous use, the RUGGLES Trademarks have become famous and well-known indicators of the origin and quality of Plaintiff's products and services, and the RUGGLES Trademarks are widely recognized by the public, including the public throughout Texas, as a designation of source in geographic areas of Texas, including this judicial district.  The RUGGLES Trademarks have also acquired substantial secondary meaning in Texas and elsewhere.  Moreover, the RUGGLES

Trademarks became famous and acquired secondary meaning before the Bellagreen Defendants that are legal entities were even formed or organized as legal entities, and before any of the Defendants began use and association of the Bellagreen Defendants with the RUGGLES Trademarks as described herein.

75.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer damages, including damage to his goodwill and reputation.   Accordingly, this action is being brought to prevent any further violations of the RUGGLES Trademarks under federal and Texas law and to compensate Plaintiff for the harm caused by Defendants' actions and any future actions.

## COUNT I

## Trademark Infringement, 15 U.S.C. § 1114

76.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-75 as though fully set forth herein.

77.     Defendants' direct, indirect, and/or contributory use of and/or association with the RUGGLES Trademarks in connection with Defendants Bellagreen's foods and/or restaurant and/or bar services is likely to cause consumer confusion and mistake and is likely to deceive consumers into believing that the Bellagreen Defendants' products and/or services are in some way authorized, approved by, sponsored by, or affiliated with Plaintiff, when they are not.

78.     Defendants' activities complained of herein constitute direct, indirect, and/or contributory use in commerce of the RUGGLES Trademarks and/or copies of colorable imitations of the RUGGLES Trademarks in a manner that is likely to cause confusion and mistake in the minds of the public in violation of 15 U.S.C. § 1114.

79.     Defendants have engaged in the aforementioned activities with the intent to confuse and deceive the public into believing that the Bellagreen Defendants and the foods and services they offer and sell are in some way authorized, approved by, sponsored by, or affiliated with Plaintiff, when they are not.

80.     Defendants' acts as described above constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C.  1114.

81.     By reason of the foregoing, Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, and Defendants are liable to Plaintiff for: (a) an amount representing Plaintiff's damages; (b) Defendants' profits; and (c) reasonable attorney fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## COUNT II

### False Designation of Origin, False Descriptions, and Unfair Competition
### 15 U.S.C. § 1125(a)

82.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-81 as though fully set forth herein.

83.     Defendants' acts as described above constitute the direct, indirect, and/or contributory use in commerce of false designations of origin, false descriptions and representations, and unfair competition because such designations, descriptions and representations are likely to cause confusion, mistake, or deception as to the origin, sponsorship/affiliation, association, or approval of the Bellagreen Defendants' food and restaurant services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

84.     In addition or alternatively, Defendants' acts as described above constitute the direct, indirect, and/or contributory use in commerce of false designations of origin, false descriptions and representations, and unfair competition because such designations, descriptions

and representations in commercial advertising or promotion misrepresent the nature, characteristics, or qualities of the Bellagreen Defendants' food and restaurant services and/or misrepresent the nature, characteristics, or qualities of Plaintiff's food and restaurant services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     On information and belief, Defendants' infringing conduct has been performed with actual knowledge of Plaintiff's rights and/or in bad faith, and with willful and deliberate intent to trade on Plaintiff's substantial recognition, reputation, and goodwill.

86.     By reason of the foregoing, Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116, and Defendants are liable to Plaintiff for: (a) an amount representing Plaintiff's damages; (b) Defendants' profits; and (c) reasonable attorney fees, costs including investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## COUNT III

### Dilution, 15 U.S.C. § 1125(c)

87.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-86 as though fully set forth herein.

88.     Through Plaintiff's long-standing and extensive use and consumer recognition, the RUGGLES Trademarks, including the RUGGLES®, RUGGLES GREEN® and RUGGLES BLACK® registered trademarks, are famous and distinctive.

89.     The actions of Defendants described above and specifically, without limitation, Defendants' unauthorized direct, indirect, and contributory use of the famous RUGGLES Trademarks in commerce to advertise, market, and sell BELLAGREEN food and restaurant services, are likely to cause dilution by blurring and/or tarnishment in violation of 15 U.S.C. § 1125(c).

90.     The actions of Defendants, if not enjoined, will continue.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the RUGGLES®, RUGGLES GREEN® and RUGGLES BLACK® trademarks, and injury to Plaintiff's business.  Plaintiff is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and 15 U.S.C. § 1125(c).

91.     On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.  Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, profits made by the Bellagreen Defendants on their restaurant services, profits made by the Web Defendants on their web, coding and internet services, the costs of this action, including investigative fees, reasonable attorney fees, and prejudgment interest, pursuant to 15 U.S.C. § 1117.

## COUNT IV

### Dilution, Tex. Bus. & Comm. Code § 16.103

92.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-91 as though fully set forth herein.

93.     Through Plaintiff's long-standing and extensive use and the subsequent consumer recognition, Plaintiff's RUGGLES®, RUGGLES GREEN®, and RUGGLES BLACK® trademarks are famous (as defined in Texas Business and Commerce Code § 16.103) and are distinctive.

94.     Defendants' use of the RUGGLES®, RUGGLES GREEN®, and/or RUGGLES BLACK® trademarks in connection with Defendants' BELLAGREEN restaurant services has caused and is likely to cause dilution by blurring and weakening of the RUGGLES®,

RUGGLES GREEN®, and RUGGLES BLACK® trademarks, in violation of Texas Business and Commerce Code § 16.103.

95.     Defendants' willful intent to trade on the famous RUGGLES®, RUGGLES GREEN®, and RUGGLES BLACK® trademarks in or for restaurant services has threatened and continues to threaten to harm the reputation of the RUGGLES®, RUGGLES GREEN®, and RUGGLES BLACK® trademarks.

96.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages, including damage to his goodwill and reputation.

## COUNT V

### Common Law Trademark Infringement

97.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-96 as though fully set forth herein.

98.     Defendants' acts complained of above constitute common law trademark infringement.

99.     On information and belief, Defendants' infringing conduct has been performed with actual knowledge of Plaintiff's rights, and/or in bad faith, and with willful and deliberate intent to trade on Plaintiff's substantial recognition, reputation, and goodwill.

100.    Plaintiff has been damaged by Defendants' acts of trademark infringement.

101.    Plaintiff is entitled to injunctive relief and Plaintiff is also entitled to recover at least Plaintiff's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## COUNT VI

### Common Law Unfair Competition

102.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-101 as though fully set forth herein.

103.     Defendants' acts complained of above constitute unfair competition under common law, at least because Defendants' acts have allowed the Bellagreen Defendants to obtain an unfair advantage as compared to Plaintiff.

104.     Plaintiff's continuous promotion and creation of goodwill in the RUGGLES Trademarks required extensive time, labor, effort, skill, and money.  Defendants have directly, indirectly and contributorily wrongfully used and are wrongfully using Plaintiff's RUGGLES Trademarks in competition with Plaintiff, and the Bellagreen Defendants have gained and are gaining a wrongful benefit by undue advantage.  The Bellagreen Defendants have not been burdened with the expenses incurred by Plaintiff.  The Defendants are directly, indirectly and contributorily obtaining the resulting benefits for their own businesses and/or products and services.

105.     On information and belief, Defendants' infringing conduct has been performed with actual knowledge of Plaintiff's rights, and/or in bad faith, and with willful and deliberate intent to trade on Plaintiff's substantial recognition, reputation, and goodwill.

106.     Plaintiff is entitled to injunctive relief and Plaintiff is also entitled to recover at least Plaintiff's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

**COUNT VII**

**Unjust Enrichment**

107.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-106 as though fully set forth herein.

108.    Defendants' acts complained of above constitute unjust enrichment, at least because the Bellagreen Defendants have wrongfully obtained benefits at Plaintiff's expense and operated with an undue advantage.

109.    Plaintiff's continuous promotion and creation of goodwill in the RUGGLES Trademarks required extensive time, labor, effort, skill and money.  The Bellagreen Defendants, themselves and through the Web Defendants, have wrongfully used and are wrongfully using the RUGGLES Trademarks in competition with Plaintiff, and have gained and are gaining a wrongful benefit by undue advantage.  The Bellagreen Defendants have not been burdened with the expenses incurred by Plaintiff.  The Bellagreen Defendants are obtaining the resulting benefits of Plaintiff's efforts and expenses for the Bellagreen Defendants' own business and products and services.

110.    On information and belief, Defendants' conduct has been performed with actual knowledge of Plaintiff's rights, and/or in bad faith, and with willful and deliberate intent to trade on Plaintiff's substantial recognition, reputation, and goodwill.

111.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer damages, including damage to his goodwill and reputation.

112.    Plaintiff is entitled to injunctive relief, and Plaintiff is also entitled to recover at least the Bellagreen Defendants' profits.

## COUNT VIII

### Breach of Contract

113.    Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs 1-112 as though fully set forth herein.

114.    On July 2, 2018, the Bellagreen Defendants and Plaintiff executed a settlement agreement to conclude the lawsuit filed by Plaintiff in December 2017, Civil Action No. 4:17-cv-03898.  A true and correct copy of that settlement agreement is attached as Exhibit D.

115.    The Bellagreen Defendants agreed in the settlement agreement that they would "take all necessary steps under their direction and within their control to not redirect web traffic for the term 'Ruggles' or 'Ruggles Green' to the term "Bellagreen," . . . ."  The Bellagreen Defendants, themselves and through the Web Defendants acting on behalf of or for the benefit of the Bellagreen Defendants, have done the contrary in breach of that agreement.

116.    The Bellagreen Defendants represented in the settlement agreement that they had "informed and directed Google Maps, Apple Maps, Yelp, NextDoor, My Table, FaceBook Google, Yahoo, Trip Advisor, and similar websites to remove and/or cancel map directions and any other information relating Ruggles Green to Bellagreen."  The opposite has occurred, in breach of that agreement.

117.    As late as December 2020, Bellagreen Defendants Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC, stated on their website at *http://hargetthunter.com/portfolio/bellagreen/* that, "Founded in 2008, Bellagreen (formerly 'Ruggles Green') is a premium fast-casual restaurant concept . . . ." and showed a picture of a restaurant bearing a "Ruggles Green" sign. This statement on the website of Bellagreen Defendants Hargett Hunter Capital Partners, LLC, Hargett Hunter Capital Advisors, LLC, and Hargett Hunter Capital Management, LLC, in 2020, conflicted with the terms of the settlement agreement, which stated that the Bellagreen Defendants were permitted to continue to use the name "Ruggles Green" only 30 days after execution of that agreement in

2018, and then only for the purpose of informing the public of renaming and rebranding of the restaurants. That period expired August 7, 2018.

118.    Defendants have repeatedly associated the Bellagreen restaurants with "Ruggles Green" and the Ruggles Green restaurants on the internet, as described for example in the Paragraphs above and in the attached Exhibits, in breach of the terms of the settlement agreement.

119.    Defendants have intentionally and/or recklessly failed to perform all the terms under the settlement agreement.

120.    Plaintiff has reminded the Bellagreen Defendants, through counsel, of their obligations on multiple occasions, and the Bellagreen Defendants have repeatedly and intentionally and/or recklessly fallen short in compliance, necessitating this lawsuit in lieu of further reminders or warnings, which Defendants have misused to delay and further their improper acts.

121.    The Bellagreen Defendants have acted in bad faith and on information and belief entered into the settlement agreement to surreptitiously perform the acts of trademark infringement and unfair competition and unjust enrichment complained of herein.

122.    The Bellagreen Defendants have acted in bad faith and on information and belief entered into the settlement agreement to surreptitiously cannibalize the RUGGLES GREEN trademark and usurp Plaintiff's goodwill in the RUGGLES Trademarks.

123.    The Bellagreen Defendants' actions complained of have necessitated this lawsuit to enforce the terms of the settlement agreement.

124.    Plaintiff has in good faith duly performed all of his obligations and duties under the settlement agreement.

125.     As a result of the Bellagreen Defendants' breach of the settlement agreement, Plaintiff has been damaged in an amount to be determined by the Court, and Plaintiff is entitled to reasonable attorney fees, costs and expenses associated with this claim pursuant to the terms of that settlement agreement.

## DEMAND FOR JURY TRIAL

126.     Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Defendants have directly, indirectly, and/or contributorily:

    (a)     infringed RUGGLES Trademarks in violation of § 1114 of Title 15 in the United States Code;

    (b)     engaged in unfair competition, false designation of origin, and/or false descriptions in violation of § 1125(a) of Title 15 in the United States Code;

    (c)     diluted the RUGGLES®, RUGGLES GREEN® and RUGGLES BLACK® trademarks in violation of § 1126(c) of Title 15 in the United States Code;

    (d)     diluted the RUGGLES®, RUGGLES GREEN® and RUGGLES BLACK® trademarks in violation of § 16.103 of the Texas Business and Commerce Code;

    (e)     violated Plaintiff's common law rights in RUGGLES Trademarks;

    (f)     engaged in common law unfair competition;

    (g)     been unjustly enriched at Plaintiff's expense;

(h)     and did all these wrongful activities willfully and intentionally;

2.     Judgment that the Bellagreen Defendants intentionally and with bad faith breached the Settlement Agreement with Plaintiff;

3.     An Injunction ordering that Defendants, their agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined and restrained from:

(a)     Using the RUGGLES Trademarks or any colorable imitation thereof, directly or indirectly, through internet or website coding or otherwise, directly or through a third party, to identify any goods or the rendering of any services or business location, or to cause a third party, including for non-limiting example Google or Apple or Duckduckgo, to identify any goods or the rendering of any services or business location, not authorized specifically in advance and on a case by case basis by Plaintiff;

(b)     Engaging in any course of conduct likely to cause confusion, deception, or mistake with Plaintiff or any of the RUGGLES Trademarks, or to injure Plaintiff's business reputation or dilute the distinctive quality of the RUGGLES Trademarks;

(c)     Using a false description or representation, including words or other symbols tending to falsely describe or represent, or having others include words or other symbols tending to falsely describe or represent, the Bellagreen Defendants' goods or services as being formerly, associated with, related to, authorized by, the same as, or similar to, Plaintiff's goods or services;

(d)     Using or continuing to use the RUGGLES Trademarks or trade names or the name or part of the name of Plaintiff or any variation thereof on the Internet (either in the text of a website, or as a keyword, search word, metatag, or any part of the description of the site);

4.     An Order that Defendants, within ten (10) days of judgment, take all steps necessary to remove from their website, Instagram page, Facebook page, or any other website or social media site containing content posted directly or indirectly by Defendants themselves or through third parties, whether or not operated by Defendants, all text referring in any way to any RUGGLES Trademarks or to Plaintiff, except as provided in Paragraph 5 below;

5.     An Order that Defendants will post on their website, social media sites, and menus, in an easily noticeable and readable manner, that "BELLAGREEN RESTAURANTS ARE **NOT** RUGGLES GREEN RESTAURANTS AND ARE NOT AFFILIATED WITH CHEF BRUCE MOLZAN," in wording where all letters are clearly and easily legible, and in the same size (at least 12 point), font, and color except that emphasis must be given to the word "not" as shown.

6.     An Order that Defendants post on their website and social media sites a copy of this Court's injunction against Defendants' unlawful activities;

7.     An Order that Defendants, within thirty (30) days of judgment, file and serve upon Plaintiff a sworn statement setting forth in detail the manner and form in which they have complied with this injunction pursuant to 15 U.S.C. § 1116(a);

8.     An Award to Plaintiff of Defendants' profits, Plaintiff's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest and reasonable

attorney fees pursuant to at least 15 U.S.C. §§ 1114, 1116, 1117, and 1125(a) and Texas

Business and Commerce Code §§ 16.102, 16.103, and 16.104;

       9.     An Award to Plaintiff against the Bellagreen Defendants for damages caused by

the Bellagreen Defendants in breaching the Settlement Agreement, and an award of attorneys

fees, costs and expenses associated with bringing this claim in accord with the terms of that

Settlement Agreement;

       10.    Retention of jurisdiction of this action by this Court for the purpose of enabling

Plaintiff to apply to the Court at any time for such further orders and interpretation or

enforcement of any Order entered in this action, for the modification of any such Order, for the

enforcement or compliance therewith and for the punishment of any violations thereof; and

       11.    Other and further relief to Plaintiff as this Court deems just and proper.


Dated: June 28, 2022                  Respectfully submitted,

                                   Karen B. Tripp
                                   Attorney in Charge
                                   By:  */s/Karen B. Tripp*
                                   Texas State Bar No. 03420850
                                   Southern District of Texas No. 2345
                                   4265 San Felipe, Suite 1100
                                   Houston, TX  77027
                                   (713) 658-9323 office phone
                                   (823) 798-7576 cell phone
                                   tripp.karen@gmail.com
                                   ATTORNEY FOR PLAINTIFF,
                                   BRUCE MOLZAN